## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

Collis Sumbak,

                Plaintiff,

                            Case No. 1:19-cv-1286-MLB

v.

Eaton Corporation,

                Defendant.

_____/

## OPINION & ORDER

Plaintiff Collis Sumbak sued his employer, Defendant Eaton Corporation, asserting claims of race and national origin discrimination in violation of Title VII of the Civil Rights Act of 1964 and race discrimination in violation of 42 U.S.C. § 1981.[1]  (Dkt. 1.)  Defendant moves for summary judgment on all of Plaintiff's claims.  (Dkt. 24.)  The Magistrate Judge issued a Report and Recommendation ("R&R"), recommending Defendant's motion be granted.  (Dkt. 46.)  When, as here,

---

[1] Both Title VII and § 1981 "have the same requirements of proof and use the same analytical framework."  *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998).  The Court thus analyzes each of Plaintiff's claims once with the understanding that the analysis applies to both Title VII and § 1981.

a party files no objections to a magistrate judge's recommendation, a court reviews the record for plain error. *See United States v. Slay*, 714 F.2d 1093, 1095 (11th Cir. 1983) (per curiam). After doing so, the Court finds no error in the Magistrate Judge's recommendation.

## I.   Background[2]

Plaintiff, who is African American and of Sudanese origin, has worked for Defendant as a production technician since 2000. (Dkts. 24-1 ¶ 1; 25-1 at 141;[3] 46 at 4.) Defendant pays its employees according to salary grades. (Dkts. 24-1 ¶ 5; 37-1 ¶ 5; 46 at 5.) The salary grades associated with the production technician position are SG34, SG36, and SG38. (Dkts. 24-1 ¶ 6; 37-1 ¶ 6; 46 at 5.) Plaintiff is currently paid at the SG38 rate—the highest salary grade for his position. (Dkts. 24-1 ¶ 6; 37-1 ¶ 6; 46 at 5.) Once an employee reaches the highest salary grade associated with his or her position, the employee cannot move to a higher

---

[2] The Magistrate Judge thoroughly laid out the factual background in his R&R. (Dkt. 46 at 4–11.) The Court finds no plain error in the Magistrate Judge's application of Local Rule 56.1(B) and adopts the material facts as laid out in the R&R, except for one typographical error this Court notes in its footnote 5. For convenience, the Court summarizes the facts here.
[3] The page numbers on Plaintiff's deposition transcript do not match the page numbers applied by the CM/ECF system. The Court cites to the CM/ECF page numbers for the transcript filed as Document 25-1.

salary grade without transitioning to a new position that has a higher salary grade. (Dkts. 24-1 ¶ 7; 37-1 ¶ 7; 46 at 5.)

Defendant creates SG40 positions when there is a specific business need. (Dkts. 24-1 ¶ 10; 46 at 6.) At the Smyrna facility where Plaintiff works, there is only one SG40 position—lead quality technician ("tester")—which was created in January 2016. (Dkts. 24-1 ¶ 11; 37-1 ¶ 11; 46 at 6.) In early 2016, Defendant notified employees at the Smyrna facility about the newly created tester position but did not mention the salary grade for the tester position. (Dkts. 24-1 ¶¶ 15–16; 25-1 at 68; 46 at 6.) Plaintiff did not apply for this position because he was an electrician and did not feel like he could do testing. (Dkts. 24-1 ¶ 19; 25-1 at 68–70; 46 at 6.) Defendant hired one of its employees to fill the tester position. (Dkts. 24-1 ¶ 20; 25-1 at 76; 46 at 7.) When this happened, Plaintiff expressed anger that he had not progressed to an SG40 position and indicated a desire to transfer out of the Smyrna facility because he was "not growing" there and wanted to be SG40. (Dkts. 24-4 ¶ 11; 25-1 at 132–33; 46 at 7.) Facilities Manager John Biggins told Plaintiff that if being SG40 was the reason he wanted to transfer, then Biggins would "take care of" it. (Dkts. 25-1 at 133; 46 at 7.) Biggins also indicated that

he would talk to Production Manager Barrett Hachey about "the next date" for a promotion and encouraged Plaintiff to take an internal training class to get the promotion. (Dkts. 24-4 ¶¶ 11–12; 25-1 at 133; 46 at 7.)

On February 26, 2018, Plaintiff received a "P" rating on his annual review. (Dkts. 25-1 at 129; 46 at 8.) A "P" rating means the employee is performing satisfactory in his job duties. (Dkts. 24-1 ¶ 41; 24-2 ¶ 18; 46 at 8.) Hachey told Plaintiff that his rating, along with the fact that the Smyrna facility did not need another SG40 position, were the reasons that he could not be promoted. (Dkts. 24-1 ¶ 25; 25-1 at 129–30; 46 at 8.) Later, Hachey told Plaintiff that he should be happy making the amount of money that he makes given that he does not have a college degree. (Dkts. 25-1 at 151; 46 at 9.) Hachey did not mention race or national origin when he made this comment. (Dkts. 25-1 at 117; 46 at 9.)

In March 2018, Plaintiff participated in a cross-training opportunity in the panelboards assembly area. (Dkts. 24-1 ¶ 29; 46 at 8.) Plaintiff remained as an SG38 while doing this cross-training, but he was no longer permitted to work overtime. (Dkts. 24-1 ¶ 29; 25-1 at 135–36; 46 at 8.) During the time Plaintiff was cross-training, a white employee

was temporarily transitioned to work in Plaintiff's vacated position. (Dkts. 24-1 ¶ 46; 25-1 at 148–49; 37-1 ¶ 46; 46 at 8.)  The cross-training lasted three to four months and ended because the individual who had been performing Plaintiff's job quit.  (Dkts. 25-1 at 138; 46 at 8.)

Plaintiff testified that in 2015 he told Biggins his fellow employees would not work with him when he was lifting heavy equipment.  (Dkts. 25-1 at 98; 46 at 9.)  Plaintiff described how this made him feel: "It looks like they – they don't want to work with me because I'm not from this place or what."  (Dkts. 25-1 at 98; 46 at 9.)  He explained his background to his boss, including that he was part of a tribe and had been tortured because of his tribal identity.  (Dkts. 25-1 at 99; 46 at 9.)  Biggins did not take any action to correct this issue, so Plaintiff spoke to Mr. Hoover (Biggins's boss) who sent a human resources employee to investigate the issue.  (Dkts. 25-1 at 99–100; 46 at 9.)  The investigation revealed that an employee named Casey was the one causing the issue.  (Dkts. 25-1 at 100; 46 at 10.)  After a meeting between Plaintiff, Casey, Biggins, and the human resources employee, Plaintiff got more help with his work.  (Dkts. 25-1 at 105; 46 at 10.)  None of Defendant's employees ever made racially

derogatory or racially offensive comments toward Plaintiff.  (Dkts. 24-1 ¶ 32; 25-1 at 102–03; 37-1 ¶ 32; 46 at 10.)

At some point, Plaintiff wrote a letter to Defendant's CEO, in which he mentioned he was from Africa, complained about the lack of promotion, and recounted Hachey's comment about his lack of a college degree.  (Dkts. 25-1 at 115–16; 46 at 10.)  Plaintiff never received a response to this letter.  (Dkts. 25-1 at 107–08; 46 at 10.)  Defendant claims no one received the letter Plaintiff alleges to have sent.[4]  (Dkts. 24-1 ¶ 39; 46 at 10.)

On March 28, 2018, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC"), asserting four accusations of misconduct: (1) Plaintiff received a "P-rating on [his] annual review which resulted in [him] not being promoted to a Grade 40"; (2) Plaintiff was denied a transfer to another location; (3) Plaintiff was removed from his job and replaced by a less qualified white male; and (4) Plaintiff was no longer able to work overtime.  (Dkts. 25-1 at 127, 223;

---

[4] Plaintiff's response to Defendant's statement of material facts provides that he "is without information sufficient to admit or deny this allegation."  (Dkt. 37-1 ¶ 39.)  As the Magistrate Judge explained (Dkt. 46 at 10 n.6), this response does not comply with the Local Rules, so this fact is deemed admitted.  *See* LR 56.1(B)(2)(a)(2), NDGa.

46 at 11.)  The EEOC issued a right-to-sue letter on December 20, 2018.[5] (Dkts. 24-1 ¶ 57; 25-1 at 228; 37-1 ¶ 57.)

## II.    Standard of Review

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it "might affect the outcome of the suit under the governing law." *W. Grp. Nurseries, Inc. v. Ergas*, 167 F.3d 1354, 1360 (11th Cir. 1999) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 1361 (citing *Anderson*, 477 U.S. at 248).

The party moving for summary judgment bears the initial burden of showing a court, by reference to materials in the record, that there is no genuine dispute as to any material fact. *Hickson Corp. v. N. Crossarm*

---

[5] The Magistrate Judge said the EEOC issued the right-to-sue letter on December 28, 2018.  (Dkt. 46 at 11.)  That date is not correct: the EEOC issued the letter on December 20, 2018.  (Dkts. 24-1 ¶ 57; 25-1 at 228; 37-1 ¶ 57.)  The Court notes this typographical error for accuracy purposes, but this date is immaterial to the Court's holding.

*Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004).  The nonmoving party then has the burden of showing that summary judgment is improper by coming forward with "specific facts" showing a genuine dispute.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing Fed. R. Civ. P. 56(e)).  Ultimately, there is no "genuine issue for trial" when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."  *Id.*  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson*, 477 U.S. at 247–48.

Throughout its analysis, the Court must "resolve all reasonable doubts about the facts in favor of the non-movant[] and draw all justifiable inferences in his or her favor."  *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993) (citing *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc)).  "It is not the court's role to weigh conflicting evidence or to make credibility determinations; the non-movant's evidence is to be accepted for purposes of summary judgment."  *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996)

## III.   Discussion

### A.    Discriminatory Failure-to-Promote

Plaintiff alleges Defendant discriminated against him by not promoting him to a SG40 position.  (Dkt. 1 ¶¶ 29, 33, 41, 45.)  To establish a prima facie case of discriminatory failure to promote by circumstantial evidence, a plaintiff must prove four elements: "(1) that he is a member of a protected class; (2) that he was qualified for and applied for the promotion; (3) that he was rejected; and (4) that other equally or less qualified employees who were not members of the protected class were promoted."  *Denney v. City of Albany*, 247 F.3d 1172, 1183 (11th Cir. 2001) (citing *Combs v. Plantation Patterns*, 106 F.3d 1519, 1539 n.11 (11th Cir. 1997)).[6]   The parties' arguments center on two possible promotions: the tester position and some other unspecified SG40 position that was allegedly promised to Plaintiff.  (Dkts. 24-6; 37.)

---

[6] "In order to establish a [discrimination] case under Title VII, a plaintiff may use three different kinds of evidence of discriminatory intent: direct evidence, circumstantial evidence[,] or statistical evidence."  *Standard*, 161 F.3d at 1330.  "The analytical framework and burden of production varies depending on the method of proof chosen."  *Id.*  The Magistrate Judge analyzed the evidence and found Plaintiff has presented only circumstantial evidence, not any direct or statistical evidence.  (Dkt. 46 at 15–20.)  The Court finds no plain error in this conclusion.

### 1.   Tester Position

On Plaintiff's discriminatory failure-to-promote claim relating to the tester position, the Magistrate Judge found Plaintiff failed to establish the second prong of his prima facie case because he admitted he never applied for the tester position.  (Dkt. 46 at 21.)  The Court finds no plain error in this recommendation.  *See Giles v. BellSouth Telecomms., Inc.*, 542 F. App'x 756, 760–61 (11th Cir. 2013) ("Generally, a plaintiff cannot claim an employer discriminatorily failed to give a promotion when the employee never applied for the position.").

### 2.   Other SG40 Position

On Plaintiff's discriminatory failure-to-promote claim relating to the other SG40 position, the Magistrate Judge found Plaintiff produced no evidence to satisfy the third and fourth prongs of his prima facie case. (Dkt. 46 at 24–26.)   The Court finds no plain error in this recommendation because Plaintiff produced no evidence to show he applied, was rejected, and that an equally or less qualified person outside his protected class got this other unspecified SG40 position.

**B.    Retaliation**

Plaintiff also asserts a retaliation claim.  "Retaliation against an employee who engages in statutorily protected activity is barred under both Title VII and § 1981." *Chapter 7 Tr. v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1257–58 (11th Cir. 2012).  "To establish a prima facie case of retaliation, a plaintiff must show: '(1) that he engaged in statutorily protected expression; (2) that he suffered an adverse employment action; and (3) that there is some causal relationship between the two events.'" *Johnson v. Miami-Dade Cnty.*, 948 F.3d 1318, 1325 (11th Cir. 2020) (citation omitted).  The focus here is on the third prong.  (Dkt. 46 at 28.) "To establish the causal connection element, a plaintiff need only show that the protected activity and the adverse action were not wholly unrelated." *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000) (internal marks omitted) (citation omitted).  The parties offered three instances of protected conduct: (1) Plaintiff's reports to human resources in 2015; (2) the EEOC charge in 2018; and (3) the letter Plaintiff allegedly sent to the CEO in 2017.  (Dkts. 24-6 at 23; 37 at 9–11.)  And the parties offered three potential adverse employment actions: (1) the failure to promote in 2017 (the tester position); (2) the failure to

permit overtime work beginning in March 2018; and (3) the allegedly poor performance evaluation in February 2018.  (Dkts. 24-6 at 23; 37 at 10–11.)

The Magistrate Judge found Plaintiff abandoned any retaliation claim based on the human resources reports as protected conduct or the failure to promote in 2017 as retaliatory adverse action because Plaintiff did not argue those at the summary judgment stage.  (Dkt. 46 at 29.)  The Court finds no plain error in this recommendation because "grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." *Resol. Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (citing *Road Sprinkler Fitters Local Union No. 669 v. Indep. Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir. 1994)).

Next, the Magistrate Judge found the letter to the CEO cannot support a retaliation claim because "the facts as established for purposes of this motion show that Defendant never received that letter" and "in order for an employer to retaliate against an employee for protected conduct, the decisionmaker must be aware of the conduct."  (Dkt. 46 at 29–30.)  The Court finds no plain error in this recommendation.  *See Brungart*, 231 F.3d at 799 ("A decision maker cannot have been

motivated to retaliate by something unknown to him."). The mere fact that Plaintiff allegedly sent a letter is insufficient to establish Defendant's knowledge of protected conduct.

The only remaining instance of protected conduct before the Court is the EEOC charge, which was filed in March 2018, and the only remaining adverse actions before the Court are the refusal of overtime (beginning in March 2018) and the poor performance evaluation (February 2018). Thus, as with the letter to the CEO, the Magistrate Judge found "any decisionmaker could not have been aware of the EEOC charge because it had not yet occurred." (Dkt. 46 at 30.) The Court finds no plain error in this recommendation. *See Brungart*, 231 F.3d at 799. Plaintiff argues the refusal of overtime can still be causally connected to the EEOC charge because it continued to occur after the EEOC charge was filed. (Dkt. 37 at 11.) The Magistrate Judge held "the continuation of a previously contemplated adverse action does not show causation when the employee is relying solely on temporal proximity to prove retaliatory motive." (Dkt. 46 at 30.) The Court finds no plain error in this recommendation. *See Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006) ("[I]n a retaliation case, when an employer contemplates an

adverse employment action before an employee engages in protected activity, temporal proximity between the protected activity and the subsequent adverse employment action does not suffice to show causation.").

### C.   Hostile Work Environment

Lastly, Plaintiff asserts a hostile work environment claim.  The Magistrate Judge found this claim to be procedurally barred because it was not included in the EEOC charge and it cannot be reasonably expected to grow out of the EEOC charge. (Dkt. 46 at 33–36.)  The Court finds no plain error in this recommendation because the accusations of misconduct in the EEOC charge involve promotion, transfer, replacement, and overtime; they do not mention a hostile work environment, nor do they imply a hostile work environment. *See Mulhall v. Advance Sec., Inc.*, 19 F.3d 586, 589 n.8 (11th Cir. 1994) (explaining that a "judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination"); *Gregory v. Ga. Dep't of Hum. Res.*, 355 F.3d 1277, 1279–80 (11th Cir. 2004) (noting that "judicial claims are allowed if they 'amplify, clarify, or more clearly focus' the allegations in the EEOC

complaint" yet cautioning "that allegations of new acts of discrimination are inappropriate" (quoting *Wu v. Thomas*, 863 F.2d 1543, 1547 (11th Cir. 1989))).

## IV.  Conclusion

The Court **ADOPTS** the Magistrate Judge's Report and Recommendation (Dkt. 46) and **GRANTS** Defendant's Motion for Summary Judgment (Dkt. 24).  The Court **DIRECTS** the Clerk to close this action.

**SO ORDERED** this 4th day of March, 2021.

MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE